## LE HARDY *v.* ACOSTA.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Segunda.

No. 803.—Resuelto en mayo 29, 1912.

PATRIA POTESTAD—CASOS EN QUE PUEDE SUSPENDERSE O PRIVARSE DE LA PATRIA POTESTAD.—Únicamente en los casos taxativamente definidos en el artículo 236 del Código Civil, puede privarse a un padre o suspendérsele en el ejercicio de la patria potestad, siendo de aplicación la máxima *"Expresio unius est exclusio alterius."*

ID.—INSUFICIENCIA DE LA PRUEBA—DUREZA EXCESIVA—CORRUPCIÓN.—De acuerdo con la doctrina del párrafo anterior, no existiendo, como no existe en el caso de autos, prueba alguna de que el padre haya tratado a sus hijos con dureza excesiva, o les haya dado órdenes, consejos o ejemplos corruptores, es errónea la sentencia que priva a un padre del ejercicio de la patria potestad y debe por tanto revocarse.

ID.—CRUELDAD—SEGUNDO MATRIMONIO.—No cae dentro de los casos de privación o suspensión de la patria potestad taxativamente definidos en el artículo 236 del Código Civil, el hecho de que el padre haya contraído segundo matrimonio poco tiempo después de haber enviudado, o que se haya casado en segundas nupcias con una mujer que no mereciera la aprobación de la madre de su primer esposa, ni constituye crueldad el que el padre confíe los hijos de su primer matrimonio al cuidado de la madrastra. El caso de *Ex parte Ryan*, 126 La., 454, es discutido y carece de aplicación al caso de autos.

ID.—BIENESTAR DE LOS HIJOS.—DEBERES DE LOS TRIBUNALES.—El bienestar de los hijos debe ser objeto de especial atención por parte de los tribunales, teniendo siempre en cuenta que la ley ha sido promulgada con ese fin, y que esa atención debe ser ejercitada en la forma dispuesta por nuestras leyes.

ID.—NOMBRAMIENTO DE TUTOR—REVOCACIÓN DE LA SENTENCIA.—Si el tribunal sentenciador en el caso de autos hubiera sólo cometido el error de no nombrar un tutor para los menores, este error hubiera sido subsanado devolviendo el caso a dicho tribunal con instrucciones en este sentido, pero consistiendo el error en ser la sentencia contraria a derecho, procede su revocación.

Los hechos están expresados en la opinión.

Abogados de la apelante: *Sres. López Landrón y Rincón.*

Abogado del apelado: *Sr. Juan Hernández López.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

El difunto Juez de la Corte de Distrito de San Juan, Sección 2ª., dictó en este caso el día 17 de abril de 1911, la siguiente sentencia:

"Después de examinada debidamente la prueba presentada, y de considerar debidamente el caso por los fundamentos de la opinión escrita que se unirá a los autos, oída sentencia final, declarando sin lugar la demanda, y ordenando que, hasta nueva resolución, queden los niños Philippe y Hilda Le Hardy y Meltz, bajo la protección y custodia de la señora abuela materna de los mismos, Doña Juana Acosta, viuda de Meltz y demandada en esta acción; reservándose siempre el demandante, el derecho de presentarse más tarde ante esta corte, cuando las circunstancias se hayan modificado, de tal manera, que se deba dictar otra providencia en beneficio de los niños; y que la orden dictada por esta corte permitiendo al demandante tener los niños en su poder durante seis horas de cada domingo, quede en vigor hasta tanto sea modificada por el tribunal."

Contra esta sentencia se interpuso la apelación que ahora pende ante este tribunal, y después de haberse formulado los debidos informes orales y presentado esmerados alegatos, quedó finalmente sometida a la resolución de este tribunal el día 9 de abril último. El apelante por medio de su abogado señala 12 errores en los cuales se funda para solicitar la revocación de la sentencia, que se alegan haber sido cometidos por

la corte sentenciadora al dictar dicha sentencia. Solamente se hace necesario citar uno de estos señalamientos de error, a saber:

"7°. La corte inferior ha errado manifiestamente en todos los respectos contenidos en el artículo 236 del propio Código, al privar al padre de la patria potestad, en todo o en parte, suspendiendo su ejercicio indefinidamente en cuanto a sus principales deberes, sin haberse alegado ni probado ninguna de las causas taxativas que requiere ese precepto legal, cuales son la dureza excesiva del trato del padre, las órdenes, consejos o ejemplos corruptores dados a los mismos hijos, y lo que es más aun, sin proveerle de tutor como hubiera sido necesario en semejante caso."

No hay necesidad de considerar ahora los otros errores que han sido alegados, pues la cuestión principal ha sido presentada en la proposición contenida en el séptimo señalamiento de error según ha sido indicado.

El artículo principal del Código Civil Revisado de Puerto Rico que se alega que ha sido infringido al incurrirse en el error a que se ha hecho referencia, es el siguiente:

"Artículo 236.—Los tribunales podrán privar a los padres de la patria potestad, o suspender el ejercicio de ésta, si trataren a sus hijos con dureza excesiva, o si les dieren órdenes, consejos o ejemplos corruptores, nombrando en su lugar un tutor, con arreglo a la ley, para las personas de los hijos. En estos casos, deberán también privar a los padres de la administración y usufructo de los bienes del hijo, y adoptar las providencias que estimen convenientes a los intereses de éste."

Se alega que otros muchos estatutos han sido infringidos y desatendidos, pero no es necesario que ahora los consideremos.

Por tanto resulta que el apelante alega que la determinación de sus derechos en este caso debe regirse por nuestros estatutos, sin tomar en consideración ninguno de los principios enunciados en la jurisprudencia americana. Examinemos por tanto ligeramente los hechos.

Las dos cartas escritas por el demandante y en las cuales
hasta cierto punto se fundan las alegaciones de la demandada,
son como siguen:

"Junio 5 de 1910. Señor Angel Acosta Quintero, Arecibo. Mi
Apreciado Tío Angel.—Hoy por la mañana me entregó Cocó su buena
carta, llena de consejos. Ha sido un consuelo para mí ver que a
pesar de todo lo que ha pasado desde mi llegada a Puerto Rico, de
la manera incomprensible, hasta para mí, en que me había olvidado
de todo se puede decir, haya Vd. podido interesarse aún para el bien
mío, para el de esas inocentes criaturas, privadas a tan tierna edad
del amor de su santa madre, lo comprendo. Sería poco decir que
estoy sumamente agradecido.

"Antier, con la buena Solita hablé detenidamente sobre todas estas
cosas. Ha sido ella para mí como una madre y siempre me acordaré
de ella con cariño.

"En la primera ocasión, dentro de dos semanas, me embarco solo,
dejando a los queridos niñitos al buen cuidado de la familia que los
quiere con delirio. Cuando estén mayores si la suerte me lo permite,
los vendré a buscar para que acaben su educación al lado de mi buena
madre.

"Cada día que pasa creo mas en el destino. Todo lo que ha pasado
en estos últimos meses, casi hasta el último detalle me parece que lo
he visto antes, lo he previsto allá lejos en otra existencia tal vez.
Paréceme que no me ha valido luchar contra la fuerza del destino y
he hecho cosas semejantes a los actos de un ser sin corazón, y sin sen-
timiento cuando en realidad soy lo contrario.

"El momento ha llegado en que he oído la voz del deber y vuelvo
al lado de mi anciana madre, para consolarla y ayudarla en cuanto
alcanzan mis fuerzas en los últimos años que le quedan aún.

"Voy sin recursos pero confiando en la buena voluntad de Dios.

"Vuelvo a repetirle mi agradecimiento por todo y espero que la
Providencia velará siempre por Vd. y todos los suyos.

"Su sobrino que le aprecia,

"(Firmado)      Philippe Le Hardy.

"San Juan, P. R., junio 15 de 1910. Sra. Doña Juana Acosta
Vda. de Meltz, San Juan. Muy Distinguida Señora.—Debiendo em-
barcarme para los EE. UU. proximamente, concedo a Vd. autoriza-
ción para que conserve a mis hijos a su cuidado y compañía, hasta
tanto en el día de mañana resuelva yo lo que considere más conve-
niente y acertado para su educación y porvenir.

"Tengo especial gusto en dar a Vd. esta prueba de confianza y afecto, seguro como estoy de que mis hijos a su lado tienen en Vd. una verdadera madre que los quiere y protege cariñosamente.

"De Vd. con toda consideración,

Suyo affmo.,

(Firmado)          L. P. Le Hardy.

Consideremos ahora los derechos de las partes en este pleito a la luz de las alegaciones que han sido presentadas en los alegatos, de la prueba aportada al juicio y de la ley aplicable a los hechos.

Este pleito lo siguió Le Hardy contra la madre de su difunta esposa, para que quedaran sus hijos Philippe y Hilda, de cuatro y tres años respectivamente y los que había dejado temporalmente al cuidado y custodia de la demandada sometidos a su autoridad como padre de los mismos, haciendo uso de su autoridad paterna *patria potestas* que le concede nuestro Código Civil. Alegó que había reclamado la posesión de sus hijos para tenerlos y gozar de su compañía, y educarlos e instruirlos con arreglo a sus recursos.

La demandada se opuso a la demanda presentada por el padre y trató de seguir en la posesión y custodia de sus nietos, alegando que el demandante se había casado por segunda vez y deseaba tener estos hijos de tierna edad sometidos al cuidado maternal de la segunda esposa. Que el demandante en el año 1909 había salido de la Isla dejando a su esposa e hijos al cuidado de la demandada que es madre y abuela respectivamente. Que después que hacía cuatro meses que el demandante se encontraba ausente, falleció su esposa en el mes de enero de 1910. Que a su regreso Le Hardy encontró á sus hijos privados de su madre y atendidos en la casa de su abuela, la demandada. Que durante su viaje de regreso a esta Isla el demandante venía acompañado de una joven en circunstancias anormales y extraordinarias; y que desde su regreso el demandante ha estado viviendo con dicha joven en Cataño como esposo y esposa. Esto fué expresado así por la demandada en su contestación según su información o creencia. Y

que finalmente en 11 de junio de 1910, el demandante contrajo matrimonio con la referida joven, cuando apenas había transcurrido cinco meses del fallecimiento de su esposa. Que el demandante ha expresado su deseo de sacar a estos niños de tiernos años de su pais natal y llevarlos al extranjero; o sea los Estados Unidos. Que después de algunas discusiones habidas entre el demandante y la demandada él escribió las cartas que llevan fecha 5 y 15 de junio, a las cuales ya se ha hecho referencia en esta opinión. Se han alegado otras cuestiones que no son esenciales y la demandada termina alegando en su contestación, que el hecho de sacar a dichos niños del cuidado maternal de la demandada para llevarlos a vivir a su nuevo hogar en las condiciones que han sido expresadas y a una edad tan tierna, constituye excesivo trato cruel hacia estos niños por parte del demandante. De conformidad con estas alegaciones la demandada solicita que se dicte una sentencia desestimando la demanda y de acuerdo con el artículo 236 del Código Civil de Puerto Rico, que se declare con lugar la reconvención establecida y se ordene al demandante que cumpla con su convenio, que se le prive de su *patria potestad* o se le suspenda en el ejercicio de la misma en cuanto al cuidado de sus hijos, que ha solicitado hasta tanto lleguen ellos a una edad en que pueda educarlos, que puede ser a la de 10 años para el niño y 12 para la niña, o la que la corte señale de acuerdo con su criterio, nombrando a la demandada como tutora de dichos niños para que pueda cuidarlos hasta que lleguen a las edades que han sido expresadas, adoptando en el ínterin las órdenes interlocutorias que puedan ser necesarias en beneficio de dichos niños y que se impongan las costas al demandante.

No hay duda alguna, según aparece de los autos, que los niños, Philippe y Hilda Le Hardy, nacidos durante los años 1906 y 1907 son los legítimos hijos del demandante y de su primera esposa que era hija de la demandada. El demandante escribió las cartas que llevan fecha 5 y 15 de junio de 1910 y que han sido anteriormente transcritas en su totalidad.

La primera esposa falleció en enero de 1910 y el demandante contrajo segundo matrimonio en junio del mismo año. Desde la muerte de su madre y desde algunos meses antes los niños han vivido con su abuela y han sido cuidados bondadosamente por la demandada. El demandante los ha visto semanalmente y según aparece de la prueba él ha sido con ellos un padre afectuoso. No existe prueba alguna de que el padre haya tratado a los hijos con dureza o que les haya dado consejos, órdenes, o ejemplos de carácter corruptivo, a no ser que se considere así el hecho de haber contraído segundo matrimonio.

Celebrado el juicio se dictó sentencia contra el demandante el 17 de abril del año último, desestimándose la demanda y confiriendo la custodia de los niños a la demandada, sin imponerse costas contra ninguna de las partes y sin que se hiciera nombramiento de un tutor para dichos menores, todo de conformidad con la orden que se ha expresado en una de las anteriores páginas. Al resolver así el caso la corte declaró que la *patria potestad* aunque indudablemente forma parte de la ·jurisprudencia de Puerto Rico, no significaba el derecho inmediato y sin condiciones ni reservas a la custodia física de los niños. Esto es bastante cierto, pero las condiciones y reservas son aquellas que se encuentran determinadas en nuestros estatutos. Hemos citado hasta ahora el artículo 236 de nuestro Código Civil en el que se expresan claramente las condiciones y limitaciones en que pueden los padres ser privados de la *patria potestad* con respecto a sus hijos o en que puede suspenderse la misma. A este estatuto lo mismo que a otros, la doctrina contenida en la máxima *"expressio unius est exclusio alterius"* es aplicable. De modo que estos son los casos en que los tribunales pueden privar por un período más o menos corto o largo al padre del derecho al dominio y custodia de sus hijos. Es inútil buscar en los autos ninguna prueba referente a trato severo, órdenes, consejos o ejemplos de carácter corruptivo o de tal clase que puedan justificar la sentencia dictada en este caso. El mero hecho de haber con-

traído el padre matrimonio en un período de viudez más corto que el de costumbre o que escogiera por segunda esposa a una joven con la cual no estaba conforme la madre de su primera esposa, no puede considerarse como un hecho constitutivo de la conducta a que hace referencia el artículo 236 del Código Civil. Ni constituye crueldad por parte del padre el confiar la custodia de sus hijos a una madrastra. Algunas de ellas han demostrado ser excelentes tutoras de los niños como todo el mundo sabe. No aparece de los hechos contenidos en los autos nada que demuestre que la actual esposa del demandante no sea una persona capacitada para educar y tener a sus hijos bajo su dirección. En el caso de Ryan que ha sido citado por el apelado en las decisiones de la Corte Suprema de Louisiana, se negó al padre la custodia de su hija de trece años por haberse considerado que era un hombre de carácter inmoral; y que el tío con cuya familia vivía la niña estaba en condiciones de atender a su cuidado; y además, la corte tenía el convencimiento que habiendo estado la niña apartada de los disgustos y desavenencias de sus padres, había crecido y no tenía afecto alguno para su padre y había llegado a una edad en la que de obligársele a vivir con él y su familia y separarse de aquellos a los cuales había estado unida, le ocasionaría futuras desdichas que nada bueno le proporcionarían. (*Ryan ex parte*, 126 Louisiana, 454.) Tal estado de cosas no aparece en el presente caso. Siendo los hechos distintos, el caso citado no es de aplicación.

Sin resolver el hecho de que un padre en casos necesarios confiera la custodia de sus hijos de tierna edad a su abuela, resolvemos sin embargo, que ninguna de las cartas que fueron presentadas como prueba puede ser interpretada sino en el sentido de que hubo un arreglo temporal, el que según los términos en que el mismo aparecía redactado, podía terminar a voluntad del padre, recuperando éste todos sus derechos como tal padre. Y lo que era aún más natural, que tan pronto como él lo creyera conveniente para su segunda esposa, deseaba traer a sus hijos a su propia casa, para gozar allí de la

compañía de los mismos, educarlos e instruirlos y atenderlos según sus recursos y los dictados de su amor paterno.

El tenía derecho a hacer esto, a menos que resultara a juicio de la corte que existía un impedimento estatutario. Es cierto que el bienestar de los hijos debe ser debidamente tomado en consideración por las cortes, pero estas deben recordar que también la ley ha sido decretada teniendo en cuenta este fin. (21 Cyc., 331, 332 y 333; In re Gates, 95 Cal., 461.) Y aunque las cortes tienen el deber de ejercitar el mayor cuidado en la protección de los niños en todos sus derechos e impedir que se les ocasione ningún perjuicio, sin embargo, este cuidado debe ejercitarse en el presente caso en la forma indicada por nuestro Código, y es el deber de las cortes, tanto en éste como en los demás casos observar la ley. Como la corte sentenciadora sin duda con las mejores intenciones no tomó en consideración los requisitos exigidos por los estatutos al dictar la sentencia apelada, no debemos permitir que subsista la sentencia así dictada. El padre debe tener el dominio absoluto, y custodia de sus menores hijos, a menos que se alegue y pruebe alguna poderosa razón legal en contrario.

Si la corte hubiera cometido error solamente dejando de nombrar un tutor, éste error hubiera sido corregido fácilmente, devolviendo el caso para que esto se hiciera; pero según nuestra opinión el padre tiene derecho a que se le devuelvan sus hijos. Por consiguiente debemos anular la sentencia dictada por la corte sentenciadora y dictar ahora una sentencia procedente a favor del demandante de conformidad con la súplica de su demanda.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.