POLANCO, PETICIONARIO Y APELANTE, *v.* ALVAREZ, OPOSITOR Y APELADO.

No. 3331.—*Visto:* Junio 11, 1924. *Resuelto:* Enero 28, 1925.

DIVORCIO—DERECHOS DEL CÓNYUGE INOCENTE—PATRIA POTESTAD.—Aunque en la demanda no se pida ni la sentencia lo disponga expresamente, la patria potestad sobre los hijos menores corresponde al cónyuge inocente.

ID.—CUSTODIA DE LOS HIJOS A LA MUERTE DEL CÓNYUGE INOCENTE.—Atendido el estado actual de la ley y la jurisprudencia en Puerto Rico, el cónyuge culpable en casos de divorcio pierde la patria potestad sobre sus hijos y no la recobra a la muerte del cónyuge inocente.

SENTENCIA de *P. Berga,* J. (Humacao), sobre nombramiento de tutor, declarando sin lugar la solicitud, sin costas. *Revocada.*

*Sres. C. Benítez* y *J. Puig Morales,* abogados del apelante; *Sr. B. Fernández García,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Se apela de una sentencia que declaró sin lugar una petición de nombramiento de tutor a una menor, hija de cónyuges divorciados, a la muerte del cónyuge inocente que la tenía bajo su cuidado y patria potestad. La petición se formuló partiendo de la base de haber perdido en absoluto el cónyuge culpable la patria potestad, como consecuencia del divorcio. La corte de distrito decidió que a la muerte del cónyuge inocente, el culpable recobraba la patria potestad y por tanto que no había lugar al nombramiento, y la parte apelante sostiene que erró al interpretar de tal modo la ley vigente en Puerto Rico. La discusión de ese error constituye la cuestión fundamental a resolver en el recurso. Los otros errores señalados carecen de importancia.

Los hechos concretos se narran en la opinión de la corte sentenciadora, así:

"Ramón Alvarez y María Polanco Santiago, contrajeron matrimonio el día 21 de septiembre de 1908. Durante el matrimonio procrearon una hija, Rosa María Alvarez Polanco, de 14 años cumplidos de edad. En 12 de agosto de 1920, María Polanco Santiago presentó en la Corte de Distrito de Humacao, demanda de divorcio contra su esposo Ramón Alvarez López, fundada en abandono por más de un año, y en ella alegó, además, que la hija habida en el matrimonio se encontraba a su cuidado. En la súplica de la demanda la demandante solicitó que se dictara sentencia declarando roto y disuelto el vínculo matrimonial existente entre las partes, con todos los demás pronunciamientos que dicha sentencia debía comprender. Visto el caso, por sentencia de 26 de noviembre de 1920, se declaró que la ley y los hechos estaban en favor de la demandante y en contra del demandado, y en su consecuencia roto y disuelto el vínculo matrimonial existente entre las partes. En la sentencia no se hizo pronunciamiento especial con respecto a la niña Rosa María, la que continuó bajo la custodia de la madre, la referida María Polanco Santiago, hasta su fallecimiento ocurrido en Caguas el día 31 de diciembre de 1923, en que dicha niña pasó al cuidado del padre. María Polanco Santiago falleció sin dejar testamento y su hija Rosa María Alvarez Polanco ha sido declarada su única y universal heredera, según resolución de esta corte de 15 de enero de 1924.

"El peticionario Nicolás Polanco Santiago es tío consanguíneo materno de Rosa María Alvarez Polanco y alega en la petición de este caso, que la referida menor se encuentra sin tutor que represente su persona y rija sus bienes, habida consideración de que su legítimo padre Ramón Alvarez López se halla privado del derecho de patria potestad por virtud de la sentencia de divorcio, y solicita de la corte dicte un auto designando la persona que deba ejercer la tutela, previa prestación de la correspondiente fianza. Y alega en contrario el opositor Ramón Alvarez López, padre de la menor, que en la demanda de divorcio establecida en su contra por María Polanco Santiago, no solicitó que la hija habida en el matrimonio quedara bajo la custodia y patria potestad de la madre, ni esto se le concedió en la sentencia, y por tanto que él, como padre legítimo, tiene la patria potestad de su referida hija Rosa María Alvarez Polanco, y solicita que así se declare, negándose en su consecuencia la petición sobre nombramiento de tutor."

Narrados los hechos, dice el tribunal sentenciador:

"Dos son las cuestiones de derecho planteadas, a saber:

"1. Si la sentencia de divorcio lleva como secuela la patria potestad de los hijos a favor del cónyuge inocente, aun cuando no se solicite expresamente en la demanda, ni se conceda en la sentencia; y

"2. Si el cónyuge culpable recobra la patria potestad a la muerte del cónyuge inocente."

Procediendo al estudio de la primera, expresa:

"En todos los casos de divorcio, establece el artículo 175 del Código Civil que los hijos menores serán puestos bajo el cuidado y patria potestad de la parte que lo hubiese obtenido. Y el artículo 234 del mismo código determina que el padre o la madre perderán la patria potestad sobre sus hijos cuando por sentencia de divorcio se concediese la custodia de los hijos a uno de los dos cónyuges. Y fundado en este último precepto es que alega el opositor que aún conserva la patria potestad sobre su menor hija, porque en la sentencia no se concedió la custodia a la madre. No es materia de discreción judicial el conceder o nó la custodia de los hijos al cónyuge inocente, y con ello la pérdida de la patria potestad, sino que ése es uno de los efectos o consecuencia necesaria de la sentencia de divorcio, como lo es también la separación de propiedades y bienes de todas clases entre los cónyuges. El artículo 175 del citado Código Civil es mandatorio. Los hijos menores serán puestos bajo el cuidado y patria potestad del cónyuge inocente, y no era necesario en este caso que así se dispusiera expresamente en la sentencia. Dicho artículo 175 del Código Civil de Puerto Rico es semejante al 157 de Louisiana, e interpretando dicho artículo la Corte Suprema de aquel estado ha decidido que cuando un matrimonio es disuelto por divorcio, la custodia de los hijos se retiene por la parte que lo hubiese obtenido, no siendo necesario que especialmente así se disponga en la sentencia. Lemunier v. McClearly et al., 37 La. Ann. 133. Véase además Crochet v. Dugas, 126 La. 285. En el presente caso la madre tenía la custodia de su hija y con ella la patria potestad y la retuvo hasta su muerte."

Y continuando en el de la segunda, dice, en parte, así:

"La patria potestad, según el artículo 233 del Código Civil, sólo se acaba cuando concurren cualesquiera de las circunstancias siguientes: la muerte de los padres o del hijo; la emancipación o la adop-

ción del hijo. Y si bien es cierto que el artículo 234 del mismo có-
digo determina que el padre o la madre perderán la patria potestad
sobre sus hijos cuando por sentencia firme en pleito de divorcio se
concediese la custodia de los mismos a uno de los cónyuges, el pro-
pósito del legislador no fué el de privarlos para siempre de ese de-
recho, pues de acuerdo con los preceptos que rigen la institución de
tutelas, que determina en qué casos procede el nombramiento de tu-
tor, no se especifica en ninguno de ellos que proceda tal designación
en el supuesto caso de que, muerto el cónyuge inocente y sobrevi-
viendo el cónyuge culpable, deba decretarse el nombramiento de un
tutor. Y debe tenerse en cuenta para orientarse en esta cuestión
trascendental, el artículo 236 que determina el único caso en que,
habiendo padres, puede nombrarse un tutor, o sea, cuando trataren
a sus hijos con dureza excesiva, o si les dieren órdenes, consejos o
ejemplos corruptores, y a cuyo estatuto le es aplicable la máxima
*expressio unius est exclussio alterius.* Véase Rojas vs. Colón, 27 D.
P.R. 882; Le Hardy vs. Acosta, 18 D.P.R. 458; Cuevas vs. Carta-
gena, 21 D.P.R. 224; Arbona vs. Torres, 24 D.P.R. 452. El artículo
234 debe interpretarse como una restricción accidental de las rela-
ciones legales entre padre e hijo, pero nunca en el sentido de des-
truir por completo los lazos creados por la naturaleza, porque si el
padre sigue teniendo obligaciones para con su hijo, esas obligaciones
nacen de un vínculo que subsiste y si se rompiera en absoluto hasta
el extremo de destruir los derechos del padre, lógico sería concluir
también que habían terminado sus obligaciones. Y el divorcio no
priva en ningún caso a los hijos de ninguno de los derechos o ven-
tajas que por la ley están señalados o que les correspondan por ra-
zón del matrimonio. Artículo 176 del Código Civil.

❈　　❈　　❈　　❈　　❈　　❈　　❈

"El artículo 73 del Código Civil Español, que comprende en
parte a los artículos 173, 174 y siguientes del nuestro, dispone que
'a la muerte del cónyuge inocente volverá el culpable a recobrar la
patria potestad y sus derechos, si la causa que dió origen al divor-
cio hubiese sido el adulterio, los malos tratamientos de obra o inju-
rias graves, y si fué distinta se nombrará tutor a los hijos.' Es de-
cir, que en el derecho español, el cónyuge culpable recobra la patria
potestad sobre sus hijos menores a la muerte del cónyuge inocente,
excepto cuando la causa que dió origen al divorcio hubiese sido:
'La violencia ejercida por el marido sobre la mujer para obligarla
a cambiar de religión; la propuesta del marido para prostituir a su
mujer; el conato del marido o de la mujer para corromper a sus
hijos o prostituir a sus hijas; y la connivencia en su corrupción o

prostitución, y la condena del cónyuge a cadena o reclusión perpetua.'
El abandono no es causa de divorcio en el derecho español, (Art.
105 del Código Civil Español), pero si lo fuera el cónyuge culpable
recobraría quizás la patria potestad a la muerte del cónyuge ino-
cente. Sin duda que el legislador español tuvo en cuenta los moti-
vos de la ruptura de vida común al determinar los casos en que el
cónyuge culpable recobraría la patria potestad, negándosela en aque-
llos en que la separación proceda de actos perversos y de malas in-
tenciones para con sus hijos. Véase 1 Manresa, 364.

"El único caso en que, conforme al artículo 164 de nuestro Có-
digo Civil, puede decirse que se decreta el divorcio por una ofensa
a los hijos es el del inciso 7: 'el conato del marido o de la mujer
para corromper a sus hijos o prostituir a sus hijas, y la conniven-
cia en su corrupción o prostitución.' En ninguna otra de las cau-
sas del divorcio que establece la ley, puede decirse que se concede
por una ofensa a la prole. Puede el padre cometer adulterio, o ser
condenado por delito grave que apareje la pérdida de los derechos
civiles, o ser un ebrio consuetudinario, o afecto al uso excesivo del
opio o de cualquier otro narcótico, tratar cruelmente a su esposa o
injuriarla gravemente, abandonarla por más de un año, sobrevenirle
impotencia incurable después del matrimonio y, sin embargo, a pe-
sar de todas estas causas de divorcio que reconoce nuestro Código
Civil, ser un buen padre, cariñoso y amante con sus hijos. ¿Y no se-
ría en extremo cruel e inhumano que a un padre, por sobrevenirle
la impotencia absoluta, perpetua e incurable después del matrimonio,
y concedido el divorcio a la mujer por esta causa, se le privara para
siempre del derecho a la patria potestad sobre un hijo procreado
antes de sobrevenirle tal estado?''

    ✻     ✻     ✻     ✻     ✻     ✻     ✻

Se refiere luego el juez sentenciador a la jurisprudencia
de California que establece que a la muerte del cónyuge a
quien se entregara la custodia del hijo menor, pasa dicha
custodia al otro cónyuge, y trata, por último, sin conse-
guirlo, de distinguir este caso del de *Mallén* v. *Vidal*, 25 D.
P.R. 669.

Un estudio de la transcripción revela que los hechos han
sido debidamente expuestos por el juez sentenciador. Su
criterio acerca de que aunque no se disponga expresamente
por la sentencia, la custodia de los hijos corresponde al
cónyuge inocente, tiene nuestra aprobación, pero no nos es

posible sostener con él que a la muerte del cónyuge inocente, el culpable recobra el ejercicio de la patria potestad, atendido el estado actual de la ley y la jurisprudencia en Puerto Rico.

Quizá se trata en verdad de un *casus omissus*, ya que toda consideración lógica milita en favor de que el cónyuge *culpable* en el divorcio vuelva a hacerse cargo de la custodia de los hijos a la muerte del *inocente* en casos apropiados. Entre las causas que reconoce la ley como base para el divorcio, existen algunas que sería imposible pensar que el legislador considerara como suficientes para la pérdida absoluta de la patria potestad.

Pero lo cierto es que la ley vigente en Puerto Rico está comprendida en el artículo 234 del Código Civil Revisado, que dice:

"Artículo 234.—El padre o la madre perderán la patria potestad sobre sus hijos, cuando por sentencia firme en pleito de divorcio se concediese la custodia de los hijos a uno de los dos cónyuges."

Y que ese artículo con los otros que guardan relación con él, fué interpretado por esta Corte Suprema en el caso de Mallén, *supra,* así:

"Roto y disuelto el matrimonio por virtud de sentencia de divorcio y concedida al cónyuge inocente la custodia y patria potestad de los hijos menores conforme el artículo 234 del Código Civil, al fallecimiento de él el culpable no la recupera, pues la naturaleza de la custodia que se concede a la parte inocente es la de destruir la relación legal existente entre el cónyuge culpable y los hijos aunque según el artículo 175 del mismo código, las relaciones de familia, consideradas aparte de la patria potestad, pueden continuarse." 25 D.P.R. 669.

La jurisprudencia ha sido publicada debidamente y es de presumirse que la Legislatura la conoce, pero si por alguna circunstancia hubiere pasado desapercibida, este caso que ahora resolvemos servirá para poner otra vez de relieve la cuestión, tocando a la Legislatura actuar bien siguiendo la pauta establecida en el Código Civil antiguo, bien otor-

gando amplias facultades a las cortes para que a la muerte o incapacidad por cualquier otro concepto del cónyuge *inocente,* reconozcan en el *culpable* la patria potestad si estuviere en condiciones de ejercerla para bien del hijo, ya adoptando cualquier otra medida que su sabiduría le aconseje, o dejando las cosas en el estado en que se encuentran.

Por virtud de todo lo expuesto, *debe revocarse la sentencia apelada* y el caso devolverse a la corte de su origen para ulteriores procedimientos no inconsistentes con esta opinión.

Los Jueces Asociados Sres. Hutchison y Franco Soto disintieron.